## Case No. 3,438.

### CROUCH v. SPEER et al.

[1 Ban. & A. 145;[1] 6 O. G. 187.]

Circuit Court, D. New Jersey. April Term, 1874.

PATENTS—SHAWL-STRAPS—VALIDITY — UTILITY — NOVELTY—EVIDENCE—BURDEN OF PROOF.

1. The test whether an invention is useful in the sense of the law, is not whether it is not mischievous, or hurtful, or insignificant, but whether it is capable of use for a purpose from which some advantage can be derived. If it be useful in this sense, the degree or extent of its usefulness, is altogether unimportant. It is not necessary that it should be the best means of producing a desirable result, but a means, although inferior to others, of producing it.

2. A rigid cross-bar connecting the ends of the handle of a shawl-strap, and provided with loops for the straps, is a patentable invention.

3. Where witnesses are called to prove want of novelty in the invention, of whom notice was not given in the answer, the evidence of such witnesses, if objected to, will not be considered in determining the question of novelty. When, however, the evidence is taken without objection, the defect of want of notice is deemed waived, and the evidence cannot afterward be objected to on that ground. A patent

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[2] [Affirmed in Crouch v. Roemer, 103 U. S. 797.]

6FED.CAS.—57

is prima facie evidence that the patentee was the original and first inventor, and any one, who controverts this, assumes the burden of proof, and undertakes to show affirmatively that there was a prior knowledge and use of the alleged invention, under such circumstances as to give to the public the right to its continued use as against the patentee.

[Cited in Hawes v. Antisdel, Case No. 6,234; Crouch v. Roemer, Id. 3,437; Rogers v. Beecher, 3 Fed. 640.]

4. The burden of proof is on the defendant, to show want of novelty in an invention; and where the defendant's testimony is inconsistent, and contradictory, and there is a reasonable doubt as to its correctness, the complainant's prima facie case, even if uncorroborated, must prevail.

5. The reissue patent, granted to George Crouch, March 7, 1871, for improvement in shawl-straps, *held* valid.

[In equity. Bill by George Crouch against Heinrich Speer and others to restrain infringement of reissued letters patent No. 4,289.]

Jonathan Marshall, for complainant.
James M. Scovel, for defendants.

NIXON, District Judge. This suit is brought for an alleged infringement of a patent for "improvement in shawl-straps," originally granted to the complainant, and surrendered and reissued March 7, 1871. The defendants put in a joint answer, admitting, in substance, the manufacture and use of the thing patented, but denying, (1) that there was anything new or useful in the patent, and, (2) that the complainant was the original and first inventor; and alleging that the improvement claimed had been known and used, in this country, prior to the invention of the complainant. The patentee states in his schedule, that before his invention straps had been used to confine a shawl or other similar article in a bundle, and a leather cross-piece, with loops at the ends, had extended from one strap to the other; and above, and attached to this cross-piece, was a handle; that the cross-piece or connecting-strap was liable to bend, and allow the straps to be drawn toward each other by the handle in sustaining the weight; that hence the bundle was not kept in the proper shape, and the handle was inconvenient to grasp; and, that his invention consisted in a rigid cross-bar beneath the handle, combined with suspending-straps, that are to be passed around the shawl or bundle, such straps passing through the loops at the ends of the handle.

He then states his three claims, as follows: (1) The rigid cross-bar A, connecting the ends of the handle B, and provided with loops, c, for the straps D, substantially as and for the purposes set forth. (2) The loops C C, made of the leather of the handle, and secured to the rigid cross-bar A, as and for the purposes set forth. (3) The rigid cross-bar for a shawl-strap, made of sheet metal, corrugated and covered with leather, as and for the purposes set forth.

If the third claim includes anything not embraced in the first, it is the limitation of the rigid cross-bar to sheet metal, corrugated. I find no evidence in the case that the defendants have infringed by the use of the corrugated metal cross-bar, except their admissions, that they had manufactured and sold Exhibit No. 4. The metal in that exhibit is covered with leather. It has the external appearance of being corrugated, but whether it is or not, is left to conjecture, as no one seems to have testified on the subject. While, therefore, it remains in doubt whether there has been any infringement by defendants of the third claim of the patent, there is no question about their infringement of the first and second claims. Their whole defence is an admission that they have infringed these, which they endeavor to justify on the ground that there had been a knowledge and use of the improvement in this country prior to the date of the complainant's invention.

1. The defendants' first allegation is, that there is nothing new or useful in the complainant's patent. If they mean by this that it is not the subject matter of a patent, the objection must be examined and answered in the light of the provisions of the 24th section of the patent act of 1870 (16 Stat. 201). That section authorizes a patent to be granted for "any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvement thereof." It will be seen that utility and novelty are the requisite conditions. The inventions or the improvement claimed must have both, or the letters patent secure nothing for the patentee. Whether it is useful, in the sense of the law, is not whether it is not mischievous, or hurtful, or frivolous, or insignificant, but whether it is capable of use for a purpose from which some advantage can be derived. If it be useful in this sense, the degree or extent of its usefulness is altogether unimportant. It is not necessary, in other words, that it should be the best means of producing a desirable result, but a means, although inferior to others, of producing it. Curt. Pat. § 449. Testing the complainant's patent by this principle, it is undoubtedly useful. The rigid cross-bar and the loops holding the straps, securing them in their place, and made of the leather of the handle, if new, add neatness and finish and value to the manufacture; and this is shown by the fact that these defendants, active business men, and alive to the public demands, gave these methods of manufacturing a preference over others in finishing and furnishing shawl-straps for the markets.

2. It only remains to consider whether the defendant's second allegation of the want of novelty in the complainant's patent has been proved. In accordance with the requirements of the 61st section of the patent act, the defendants, in their answer, gave notice of prior knowledge and use of the al-

leged improvement of complainant by Speer & Mattner, Speer & Brother, Nicholas Murphy, Henry Van Buren, and Henry Simon. Neither Mattner nor Simon was sworn on the examination; nor was Reinhold Speer, until all the testimony in chief and in rebuttal, was closed on both sides. The complainant's solicitor, very properly, objected to his introduction, at that stage of the proceedings, to testify upon any points pertinent to the issues made in the pleadings. A number of witnesses, however, were examined on this subject, of whom no notice was given, but to whose testimony no exceptions were taken when they were offered, except in the case of Louisa Stephan. That objection renders her evidence inadmissible, and it has not been considered. In the other instances the court must assume that the want of notice was waived by the complaint. Parties are not allowed to experiment with witnesses, suffering them to be examined, and subjecting them to cross-examination, and afterward, if the testimony does not happen to suit them, asking for its exclusion. The object of the statute is to guard plaintiffs against surprise; but if they will not avail themselves of the privilege, and require the previous notice, they must not expect the court to invoke for them the provisions of the act.

In considering the case, it should be remembered, that the patent is prima facie evidence that the patentee was the original and first inventor. Any one who controverts this, assumes the burden of proof, and undertakes to show affirmatively that there was a prior knowledge and use of the alleged invention, under such circumstances as to give to the public the right of its continued use against the patentee.

This the defendants have failed to do; the evidence introduced by them is frequently contradicted, and is inconsistent with itself and many well established facts. The most unsatisfactory portion of it, and the part which leads to the gravest suspicions of a want of candor and accuracy, is the testimony of the defendant, Heinrich Speer, and that of his principal witness, Edward Simon.

Let us first advert to the evidence of the defendant, Heinrich Speer. He states, and repeats the statement in subsequent parts of his testimony, that he arrived in this country on the 16th day of February, 1866; that he came directly to Newark; worked "on his own hook" for three weeks, and then engaged with Mr. Simon about the end of March; remained there until June, and left his employ; went to work again for himself, and peddled his wares until the end of the year; then, in 1867, began work for Mr. Peddie, and continued with him about two years, Mr. Peddie furnishing the stock for shawl-straps, to wit, sheepskin, cowhide leather, and steel springs, the latter being used to make the rigid cross-bar. He is evidently mistaken in regard to all the material facts

of his statement. He came to this country on a travelling pass-card, which had been renewed to him on the 28th day of May, 1866, at his residence in the city of Glogau, in Prussia. After that date he went to Munich, to Berlin, to Hamburg, and to Liverpool, whence he sailed to the United States. If he landed here in the month of February, and it seems to be impossible that he should fail to remember whether he crossed the ocean at so recent a date, and for the first time, in midwinter or in summer, it was not earlier than February, 1867. If he began work for Simon at the end of March, it was as late as March, 1867; and if he remained there until the close of the year, he could not have worked for Peddie before 1868. And to this effect is the testimony of Peter Marten, the foreman of Peddie & Co., and of Mr. Jenkinson, one of the members of the firm. Marten says that Heinrich Speer commenced work there in 1868; that he worked for about a year on ladies' satchels, and after that began upon shawl-straps; and that Reinhold Speer did not begin until about a year after Heinrich. Mr. Jenkinson, after referring to the books of the firm, testified that Heinrich began to work for them in July, 1868, and Reinhold not until afterward. Marten never knew or heard of Peddie's having, or having manufactured, shawl-straps with rigid cross-bars before about 1869, and cannot believe that they could have been in use without his knowledge. Mr. Jenkinson is more cautious, but he is not willing to say that he ever heard of them before 1868. It is to be regretted that Mr. Peddie, who, the defendant Speer alleges, furnished him with the steel bars for stiffening the shawl-straps as early as 1867, was not examined. He was absent and travelling for his health; but the evidence of Mr. Fitzgerald stands uncontradicted, that when the complainant notified Mr. Peddie in 1870, that the sale of shawl-straps, with the rigid cross-bar, was an infringement of his patent, he at once stopped the manufacture and purchase and sale of such articles, and complained that he had been imposed upon by Speer's misstatements in regard to his anticipating the patent.

Is it not quite obvious from all this that Speer has antedated—it is not necessary to say wilfully—his arrival in this country; that the different witnesses who speak of the use of the rigid crossbar by him in 1867, are mistaken in regard to the year, and that such use by him must be postponed to at least one year later?

Edward Simon is hardly more fortunate in the consistency and accuracy of his statements. He says, in his examination in chief, that he has been the manufacturer of shawl-straps, in Newark, since 1856; that, in making them, a flat bar of iron was applied between the two pieces of leather; that it was used during the year 1860, "off and on;" and that the loop at the end of the handle, was like the loop on complainant's Exhibit D;

that his firm was served with a notice from the complainant, Crouch, in 1868 or 1869, not to infringe his patent, but that they kept on making shawl-straps; and further that Heinrich Speer worked for them early in the winter of 1866. It is singular and significant that the only material statements in this testimony, which, from their nature, are capable of being contradicted, are the date of the complainant's notice to them, and the date of Speer's employment by them. And neither are true. He corrects the first himself afterward, and Heinrich Speer was doubtless in Europe, "early in the winter of 1866." He was asked, on cross-examination, when he first used iron in the cross-bar of shawl-straps, and he answered: "In 1865 or 1866, and before." When pressed to state what time he meant by "before," he replied, "1864," that during that year and the subsequent years to 1868, they had manufactured large quantities of shawl-straps, with the rigid cross-bar, that they made the bar themselves from hoop-iron and sheet-iron, and put the straps upon the market and sold them, "in New York and all over the country, north, south, east, and west, and the Canadas and California." He was then asked, if he had not fixed a previous date for selling shawl-straps with iron cross-bars, in an affidavit filed in this case, on the motion for a preliminary injunction. He replied: "Yes; as far back as 1858, 1859, and 1860." He was also cross-examined in regard to the notice which the firm had received from the complainant, warning them against infringement, and what was done in reference to it; and his responses are so remarkable, and so fully exhibit the general tenor of his testimony, that I quote it from defendants' record, page 26: "Q. 51. You received a notice from Mr. Crouch some time in the latter part of 1870, to discontinue an infringement on his patent? A. What time in 1870? Q. 52. The latter part—December? A. I think we did. There was one sent to us. Q. 53. What did you do with reference to that notice? Did you stop making shawl-straps having the flat iron cross-bar in them? A. Did not stop it altogether—not to my knowledge. In fact, we are using to-day, on all our bag-handles an iron wire, which goes through the handle, fastened on the end with a screw, and fastened on the handle fastening, on which we claim a patent. Q. 54. What do you mean by saying, 'did not stop it altogether, to my knowledge?' A. Working up our scraps from iron, as well as pasteboard and leather fillings. In fact, our shawl-strap manufactory did not amount then to any account," etc. "Q. 55. Did you not stop using the cross-bar at the time, or shortly after the time, of receiving the notice? A. Not on the notice. Not on account of the notice. Q. 56. But you stopped using them, did you not? A. On the request of different customers. Remarks were made that by a bend you break them. They don't go back, you see. Q. 57. Then you stopped using them altogether, in consequence of these remarks, did you? A. You have asked me that three or four times already. Make it as a final question, and I will give you a final answer. Q. 58. Same question repeated. A. As a final question, I will answer you. (Counsel for complainant objects to the dictation of witness as to what shall be the question.) I will give you what I know about it. In the first place, pasteboard scraps are cheaper than iron scraps. 2d. I have been too much annoyed, from our machine operators, (sewing machine), to stitch them with the iron cross-bars for the same price as with pasteboard and leather chip fillings. They broke too many needles, and they have to buy them. 3d. Our drummers, or salesmen, as you call them, while the people found out by bending, with the iron bar, it will break or keep crooked; gradually we stopped using them. Q. 59. Do you make straps now with iron or pasteboard, for stiffening in the cross-bar? A. We make very few straps, and the bar filled with pasteboard, and we do make a very cheap shawl-strap—a handle, with two loops attached to it, with an iron filling, three-eighths iron, and a round handle; no cross-bar on it. Q. 60. You say, in answer to question 58: 'Gradually we stopped using them.' Have you commenced making, since then, shawl-straps with iron cross-bars in them? A. Not as I know."

Let us compare all the testimony of this witness with other evidence introduced by the defendants from the manufactory of Simon & Co. They first examined Nicholas Murphy, the foreman of the establishment. He testifies, that he has superintended the making of shawl-straps for Simon & Brothers, since 1866, and that he invented and first used these in that year—the flat iron bar for stiffening. He assigns no satisfactory reason why he fixed the date in 1866; but he acknowledges that, when the notice of Crouch was served upon them, they stopped putting iron into the body of the strap, and used pasteboard instead. Henry M. Van Buren, who has been manufacturing shawl-straps for Simon & Brothers, since 1865, is next sworn, and his statement is that they used the flat cross-bar from 1867 to 1870; that he and Nicholas Murphy were its inventors, and first brought it into use in 1866. He admits, in his cross-examination, that Mr. Simon put in the iron in 1865, as an experiment—"put it in to try how it would work;" that they manufactured very few in 1866, with the iron cross-bar but a large number in 1867; but he assigns no satisfactory reason, why he fixes the manufacture in these years, rather than in 1868 and 1869.

In the midst of such diversity of statement, who speaks the truth? But the testimony of Mr. Fitzgerald brings to light a still greater contradiction. He says, that in the year 1870, shortly after the complainant had sent the notice to Edward Simon & Bros. that they must cease their infringement, he called

at their store, and they asked him why a notice had been sent to them, as they were not infringing the patent; that they had never made shawl-straps with rigid cross-bars; that they manufactured nothing, except a common cheap article, such as they then had on hand, and invited him to examine their stock for himself; that he made the examination, and found that the shawl-straps were without the rigid cross-bar. No one has been offered to contradict this evidence; but, on the other hand, Joseph R. Davis, then a salesman in the employ of the Simons, substantially confirms it. It is impossible to give much weight to testimony so inconsistent and contradictory. I have adverted to it at greater length than usual in such cases, to show that there is ground for reasonable doubt, in regard to its correctness. Where such doubt exists, the complainant's prima facie case, even if uncorroborated, must prevail. But it does not stand without corroboration. The complainant called William H. Cleaveland, William Roemer, Peter Marten, Jacob Lagowitz, Joseph R. Davis, and Philip P. Lynch, to testify as to the state of the art. They seem to be intelligent and disinterested witnesses; have been for years, more or less, connected with the manufacture and sale of shawl-straps, and they all trace the origin of the rigid cross-bar, to the invention of the complainant, or deny its existence or use prior to 186S.

Upon the whole case, I am of the opinion, that there should be a decree sustaining the validity of the complainant's patent, and giving him profits and damages for its infringement, since March 7, 1871, the date of the reissue, and also an injunction, restraining the defendants from further infringement.